*2004 ND 226*

**Jody FOSTER, Plaintiff and Appellee**

v.

**Daniel FOSTER, Defendant
and Appellant.**

No. 20040063.

Supreme Court of North Dakota.

Dec. 14, 2004.

Richard L. Hagar, Kenner Sturdevant & Cresap, PC, Minot, ND, for plaintiff and appellee.

Lynn M. Boughey, Boughey Law Firm, Minot, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Daniel Foster appealed from a divorce decree awarding custody of his two children to Jody Foster. We affirm.

I.

[¶ 2] Daniel Foster and Jody Foster were married in England on September 8, 1990. Two children were born during the

13-year marriage; they were 12 and 9 at the time of trial. Jody Foster had temporary custody while the divorce was pending.

[¶ 3] Daniel Foster was in the Air Force when the parties married. After he was honorably discharged in 1992, they moved to Oregon, where he had been raised. Jody Foster missed her home state of North Dakota, and a year later they moved to Minot where they have lived since. He works as a self-employed handyman earning approximately $12,000 annually. She does medical transcription from her home, working an average of 20 hours each week and earning approximately $400 per month. Both parties have high school diplomas and took some college courses but did not complete degrees.

[¶ 4] Both parties are smokers. Jody Foster struggles with her weight. Otherwise both parties appear to be in good health.

[¶ 5] The parties acknowledge the marriage was strained for many years. Daniel Foster is outgoing and social, while Jody Foster prefers to stay at home. They attended one session of marriage counseling in 1996, and she attended a few additional sessions. She said he was controlling and tried to run her life. Jody Foster has never had a driver's license, and it was suggested during counseling that she should obtain one to help her feel more independent. She still has not taken steps to accomplish this, admittedly because she does not want to.

[¶ 6] Daniel Foster decided to move the family back to Oregon in 2002 because he felt he could make a better living there. He claims he discussed the move with Jody Foster, but she alleges she learned of his intentions from a member of their church. She refused to leave and served him with divorce papers shortly before he was to move.

[¶ 7] Trial was held October 24, 2003, and December 2, 2003. The parties divided their property by agreement prior to trial, leaving the custody of the children as the primary issue at trial. The district judge issued his decision in a letter to the parties on December 15, 2003. The letter stated Jody Foster would have custody and Daniel Foster liberal visitation, he was to pay child support as previously ordered and spousal support of $200 per month for three years, and her attorney was to draft the appropriate documents. Daniel Foster's attorney submitted a proposed order and judgment on December 18, 2003, stating her attorney had failed to prepare the documents and he was exercising his right to do so under N.D.R.Ct. 7.1. Jody Foster's attorney sent a letter on December 19, 2003, saying Daniel Foster's proposed order was improper because it did not contain findings of fact and requesting the judge to provide some guidance so he could draft a document that included findings of fact. There is no record of further correspondence between the judge and Jody Foster's attorney. Jody Foster's attorney submitted a proposed order on January 6, 2004, which included findings of fact similar to those in the guardian ad litem's summation report. Daniel Foster's attorney, through his secretary, sent a letter on January 6, 2004, stating he had objections to the proposed order and would be submitting those objections within 10 days of receipt of the documents as allowed under N.D.R.Ct. 7.1. The judge signed the proposed findings and order prepared by Jody Foster's attorney on January 6, 2004, and the judgment was filed on January 7, 2004. Daniel Foster appealed.

## II.

[¶ 8] A trial court should consider the best interests of the children as

outlined in N.D.C.C. § 14–09–06.2 when making a custody determination. *Huntress v. Griffey*, 2002 ND 160, ¶ 5, 652 N.W.2d 351. A trial court's child custody determination is treated as a finding of fact and is reviewed by this Court under the clearly erroneous standard. *Id.* (citing *DesLauriers v. DesLauriers*, 2002 ND 66, ¶ 6, 642 N.W.2d 892). A finding is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support the decision, or, even though the decision has some evidentiary support, after viewing all the evidence this Court is left with a firm and definite conviction a mistake has been made. *Huntress*, at ¶ 5 (citing *Ramstad v. Biewer*, 1999 ND 23, ¶ 10, 589 N.W.2d 905).

[¶ 9] Findings made under Rule 52(a), N.D.R.Civ.P., provide guidelines to help the appellate court understand the factual basis relied on by the trial court when making conclusions of law and entering judgment. *Huntress*, 2002 ND 160, ¶ 6, 652 N.W.2d 351. Rule 52(a) states:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; . . . It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court. . . .

N.D.R.Civ.P. 52(a). This Court has found sufficient findings in "mislabeled findings" and "transcribed oral opinion[s]." *Huntress*, at ¶ 7 (citing *Skoglund v. Skoglund*, 333 N.W.2d 795, 796 (N.D.1983) and *Soby Constr., Inc. v. Skjonsby Truck Line*, 275 N.W.2d 336, 341 (N.D.1979)).

[¶ 10] There is nothing in the record indicating the district judge made either oral or written findings of fact other than the directives in his letter dated December 15, 2003. However, he amended the findings prepared by Jody Foster's attorney by removing a line, which is evidence that he read them and, with that amendment, signed the findings. When the court signs proposed findings they become the court's findings and will be upheld on appeal unless clearly erroneous. *Smith Enterprises v. In–Touch Phone Cards*, 2004 ND 169, ¶ 11, 685 N.W.2d 741. "Although we prefer that trial courts prepare their own findings of fact, we reject [the] argument that the court's wholesale adoption of [Jody Foster's] proposed findings of fact, by itself, is reason to reverse the court's decision." *Id.*

## III.

[¶ 11] Daniel Foster argues he should have had 10 days to object to Jody Foster's proposed findings and order before they were filed. Rule 7.1(b)(1), N.D.R.Ct., states:

> Any findings of fact and conclusions of law prepared by one or more parties shall be served upon all other parties for review and comment. The other parties may serve a response in writing, within 10 days of service, or such other time as the court, in its discretion, may allow. The court shall thereafter enter findings of fact and conclusions of law as it may deem appropriate.

[¶ 12] This Court has noted objections to findings of fact may be raised at the trial court level under N.D.R.Ct. 7.1(b)(3). *Ratajczak v. Ratajczak*, 1997 ND 122, ¶ 11, 565 N.W.2d 491. N.D.R.Ct. 7.1(b)(3) states, "[n]othing contained in this Rule of Court affects the right of any party to move the court for an order amending the findings of fact finally entered by the court or to make additional findings, under N.D.R.Civ.P. 52(b)." Under Rule 52(b),

N.D.R.Civ.P., a party who objects to findings of fact may, no more than 15 days after notice of entry of judgment, serve a motion requesting an amendment to the findings.

[¶ 13]   Daniel Foster's attorney's secretary sent a letter on January 6, 2004, stating, "[p]lease be advised that Mr. Boughey and his client have specific objections in regards to the above documents. Mr. Boughey will provide a detailed listing of these objections within 10 days of receipt of these documents as provided under Rule 7 of the Rules of Court." There is nothing in the record indicating any further objection was made by Daniel Foster.

[¶ 14]   Under N.D.R.Ct. 7.1(b)(1), Daniel Foster should have been given 10 days to object to the proposed findings of fact before they were filed. Although the district court erred in not waiting to file the findings, it was harmless error. The findings were clearly adopted. Daniel Foster had a further option to bring to the district court's attention any particular findings that he believed were not supported by the evidence under Rule 52(b), N.D.R.Civ.P., or to pursue his appeal. He chose to appeal.

## IV.

[¶ 15]   Attorney Channing Schmidt was appointed guardian ad litem and participated in the trial on behalf of the minor children. Schmidt's position as guardian ad litem, rather than custody investigator, was established and clarified during the trial. Schmidt submitted a summation report on December 12, 2003. The final paragraph of his report recommended Jody Foster receive custody of the children. Daniel Foster argues it was improper for Schmidt to make a recommendation because he was a guardian ad litem, and only custody investigators are supposed to make custody recommendations.

[¶ 16]   Rule 8.7, N.D.R.Ct., outlines the responsibilities of a guardian ad litem. A guardian ad litem "shall advocate the best interests of the child as to legal custody, physical placement, visitation, and support." N.D.R.Ct. 8.7(d)(1). A guardian ad litem may also "deliver a summation." *Id.* at (e). The rule does not specifically grant or deny a guardian ad litem the ability to make a custody recommendation.

[¶ 17]   Rule 8.6, N.D.R.Ct., outlines the responsibilities of a custody investigator. A custody investigator shall "prepare a written report regarding the child's best interest, including conclusions and recommendations and the facts upon which they are based." N.D.R.Ct. 8.6(b)(8). A custody investigator is specifically required to make a custody recommendation.

[¶ 18]   Daniel Foster argues a guardian ad litem must be prohibited from making a custody recommendation because Rule 8.6 specifically requires a custody investigator to make a recommendation and Rule 8.7 is silent for a guardian ad litem. We decline to read the rules this way. A guardian ad litem's job is to advocate the best interests of the child, and this may include a custody recommendation.

## V.

[¶ 19]   We affirm.

[¶ 20] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and WILLIAM A. NEUMANN, JJ., concur.

I concur in the result.   DALE V. SANDSTROM.